D. C. DAY ET AL. *v*. JAMES T. GRADY ET AL.

**Pleading—Attacking Court Record.**

In attacking a court record, the allegations should be direct, explicit and unmistakable.

**Appeal—Presumption—Reading and Signing Proceedings.**

Where it is admitted that orders as to the appointment of an executor and the execution and acceptance of a bond are to be found in

the order book of the court, their authenticity will be presumed, and it will also be presumed that the proceedings were read as required before being signed.

**Executors and Administrators—Limitation of Action—Sureties on Bond.**

If suit on an executor's bond was not instituted within five years from the time when distribution should have been made, the sureties on the bond may defeat recovery by pleading the statute of limitations.

**Parties—Personal Representative.**

In an action by a legatee on the bond of the executor, the personal representatives of deceased legatees should be made parties.

**Infant—Judgment.**

Where one of the parties at the time suit was brought was an infant, but arrived at age before judgment was rendered, and claims the benefits of the judgment, the judgment is not invalid as to him.

APPEAL FROM TODD CIRCUIT COURT.

March 23, 1874.

OPINION BY JUDGE LINDSAY:

John Pendleton, deceased, late of Todd county, by his last will and testament devised almost his entire estate to such of his grandchildren as might be living at the time of his death, providing that in case either of the devisees should die in infancy and unmarried, the portion devised to such devisee should pass to his or her brothers and sisters.

The fifth clause of his will is in these words:

"I desire that the part of my estate that may pass to the children of my daughter, Nancy Grady, shall be paid over to my son-in-law, James T. Grady, and by him managed to the best advantage for the benefit of the children of my daughter, Nancy Grady, and pay over to them their interest or share as they arrive at age or marry. I also desire that that portion of my estate that shall fall to the children of my daughter, Rebecca Marrion, shall be paid over to my son-in-law, Ruben D. Marrion, and by him managed for the benefit of the children of my daughter, Rebecca Marrion, and pay over to them their interest or shares as they become of age or marry. It is further my desire that the portion of my estate that

shall fall to the share of the children of my deceased son, H. B. Pendleton, and my deceased daughter, Sarah Ann Halsell, formerly Sarah Ann Grady, shall remain in the hands of my executor, and be by him managed to the best advantage for the benefit of said children, and pay over to them their part or shares as they arrive at age or marry. My executor is requested, however, to expend a sufficient part of their shares to decently clothe, educate and board them."

James L. Lawson was appointed executor, and qualified as such in the Todd County Court. By a settlement made with the county judge, which was corrected and ordered to record by said county court in 1868, it appeared that he was then indebted to the legatees in a large amount. Said legatees having joined with them James T. Grady and Ruben E. Marrion, who are styled trustees, on the 24th of February, 1869, instituted this suit against Lawson and his official sureties to recover such amounts as might be found in his hands due respectively to each of them. By their answer, the sureties raised an issue as to the correctness of their principal's settlement with the county judge; and the cause was ordered into the hands of the master commissioner for the purpose of having it surcharged and corrected. His report showed a balance unaccounted for by the executor of over fourteen thousand dollars. Exceptions were sustained reducing the amount of this balance to twelve thousand nine hundred twenty dollars; and for this amount judgment was rendered; and to review this judgment the sureties prosecute this appeal.

The grounds of complaint urged by appellants will be noticed in their natural order. The petition distinctly charges that at the July term, 1858, of the Todd County Court, the will of the testator was properly proved and admitted to record, and that Lawson was admitted and qualified as the executor of said will, and entered into a bond to the commonwealth of Kentucky, according to law, with Z. Billingsly, John P. Billingsly, J. D. Hancock and D. O. Day as his sureties, covenanting to and with the commonwealth, etc. *Profert in curia* was made of a copy of said bond, which is regular in form and duly attested. To this D. O. Day answers and alleges, that he is advised that the record book of said court does contain what purports to be an order of said court, appointing said Lawson executor of said will, and that he executed a bond as such with defendant and others as his sureties; but he charges that said pretended

orders are invalid, and are not, in fact, the orders of said court. Neither said pretended orders nor the minutes of said court were ever read in open court, nor were they signed by the judge or presiding justice of said court. And so he alleges that said order and all proceedings in pursuance thereof, including the bond aforesaid, which was never approved by said court, are void.

Sec. 5, Art. 21, Chap. 27, Rev. Stat., provides that the county court shall be a court of record, and that, first, before every adjournment, the minutes of the proceedings of the court shall be publicly read by the clerk, and corrected, if necessary, and then the same shall be signed by the judge or presiding justice; second, the minutes signed shall be taken in a book and carefully preserved among the records; and no proceedings of the court shall be valid until the same be so signed and read.

Whatever may be the legal effect of a failure to observe these provisions, we do not deem it essential to decide the question in this case. It is conceded that the record book contains what purports to be orders qualifying Lawson as executor, and accepting his bond as such. It is not alleged that the minutes of the proceedings of the court on the way these orders purport to have been made, have not the name of the judge or presiding officer. In attacking a record or impeaching the contents of a book recognized to be the order book of a court (if such a practice be allowable under any circumstances), the charge should be direct, explicit and unmistakable. If it was intended to charge that the proceedings of the court had on the day in question, were not signed at all, allegations to that effect should have been specifically made. In the absence of a direct charge to the contrary, we must presume that the order book of the court not only contains what purports to be an order showing that Lawson qualified as executor and executed the bond sued on, but that the proceedings purport to have been signed by the judge or presiding justice. There is nothing in the record showing that the proceedings are not properly signed, nor that the signature of the officer (if they are signed) is a forgery. It is admitted that these orders are to be found in the book in which the records of the court were kept, and all the presumptions must be in favor of their authenticity. It must also be presumed that the proceedings were read as the law requires before being signed.

The plea of the statute of limitations should have prevailed as to

the children of Nancy Grady and Rebecca Marrion. The effect of the fifth clause of Pendleton's will was to constitute the fathers of these children trustees, with full power to demand and receipt for such sums as passed to their children respectively under the third clause, and to charge them with the duty of managing the estate devised, and paying it over to each grandchild as it arrives at age or marries. James T. Grady and Ruben Marrion accepted the trust, and the sureties of the executor had the right to rely upon the trustees using proper diligence in collecting from their principal all moneys due to their *cestui que trust*. We perceive no reason why the trustee might not have coerced from the executor the greater portion of the estate in his hands at the end of two years from the time of his qualification. It may be that it was necessary that he should retain in his hands for a longer period a portion of the estate, on account of the litigation concerning the slave, Moses, the settlement of the partnership between Marrion and the testator, and the suits on account of his two slaves, Jim and Tom. The fact should be ascertained, the sums necessary to be retained, determined, and the period fixed at which final distribution should have been made of the amount so necessarily held. If more than five years elapsed after the period so fixed, before the commencement of suit, then the statute will apply as to the entire balance claimed by the children of Grady and Marrion; if not, they will be entitled to their portion of the sum necessarily retained for the purposes above stated.

The fact that Lawson qualified as guardian for the two legatees, Rebecca and John P. Grady, children of Mrs. Halsell, is no bar to their action against the sureties on his bond as executor. He was directed by the will, to retain and manage for their advantage the amounts devised to them, and to pay over to each of them, as they should arrive at age or marry; and the sureties undertook that he would execute this trust. They cannot escape responsibility by reason of the action of the county court in appointing a statutory guardian for the legatees. It was necessary to make the personal representative of the deceased legatees parties. They died in infancy, and their shares passed to their brothers and sisters under the will, and not by descent. There is nothing in the record tending to show that either of them owed anything at the time of their deaths. It is too late to object for the first time in this court that James P. Pendleton was an infant when this suit was begun, and

that by the will Lawson had the right to retain and manage his legacy until he reached the age of twenty-one years. His disability was not objected to in the court below. The proof shows that he was of age when the judgment was rendered, and as he claims the benefit of it, he is thereby barred from suing them again.

Appellants were not entitled to refunding bonds. Lapse of time protects them from any and all of the testator's creditors, except Lucy Pendleton's administratrix, and provision is made in the judgment for the payment of the amount claimed by her. They were not entitled to credit for the amounts for which the slaves, Jim and Tom, were sold. Lawson received these two negroes under John Pendleton's will. He treated them as assets in his hands. He was guilty of no tort. The testator claimed the slaves as his own, and although it turned out that his claim was not well founded, it was he, and not Lawson, who was guilty of the conversion. The judgment in favor of Lucy Pendleton's administratrix is against Lawson, as executor, to be levied of assets in his hands. The appellees will be compelled to pay it. Hence he should have had no credit for its amount in his settlement with the county court. Appellants are liable for all the assets of John Pendleton's estate which reached the hands of Lawson. They must account for the proceeds of these slaves either to the appellees or to the judgment creditors; and the judgment in this case leaves it optionary with them which they will do.

The expression of opinion by this court in the action of Lucy Pendleton's Administratrix' v. John Pendleton's Ex'r, that there was no legal conversion of these slaves in the lifetime of Pendleton, cannot control in this case. This expression was used in a suit to recover hires, but in the action to recover the value of the slaves, it was adjudged by the circuit court that they should be paid for out of the assets of John Pendleton's estate. To this action John Pendleton's legatees were parties. The judgment was affirmed by this court, and yet remains in full force and effect, and is conclusive as well upon the sureties of the executor as upon Pendleton's legatees. For the error of the circuit court in wholly overruling the plea of limitation, the judgment appealed from is reversed and the cause remanded for further proceedings consistent with this opinion.

*Petrie & Reeves, Feland & Evans, for appellants.*

*Radman, Terry, Petrie, for appellees.*